Exhibit 3:

Affidavit of Grievance Coordinator

Tiffany Hickerson

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CHAD EDWARD LEATHERMAN,**<br>**Plaintiff,** | |
| vs. | Case No. CIV-21-672-D |
| **CORECIVIC, Inc., et. al.,**<br>**Defendants.** | |

## AFFIDAVIT

| | |
|---|---|
| **State of Oklahoma** | )<br>) ss: |
| **Payne County** | ) |

COMES NOW Tiffany Hickerson, having been previously sworn, and stating as follows:

1.      I am employed by CoreCivic, Inc., as the facility Grievance Coordinator for Cimarron Correctional Facility.  I handle inmate grievance matters and maintain the facility's grievance records and logs.  I have been employed at Cimarron Correctional Facility for approximately 7 years.  I became the Grievance Coordinator at this facility during March 2018.  CoreCivic has its principal corporate offices in Nashville, Tennessee.

2.      Chad Edward Leatherman, DOC# 700760, is a medium security inmate who was placed for incarceration at Cimarron Correctional Facility by Oklahoma Department of Corrections.  CoreCivic had an incarceration services contract with Oklahoma Department of Corrections for the placement of Oklahoma DOC inmates at Cimarron Correctional Facility.

3.      As Grievance Coordinator I process and maintain the grievance records and grievance logs here at Cimarron Correctional Facility.  I am familiar with the grievance process and with the Oklahoma Department of Corrections Grievance Policy, OP-090124.  I have access

1

to all of the facility's records.  I additionally maintain and have access to the disciplinary appeal logs.

4.     Chad Edward Leatherman, DOC# 700760 is no longer housed at Cimarron Correctional Facility.  He was housed at this facility from February 1, 2018 – August 25, 2020.  Oklahoma DOC records indicate inmate Leatherman is currently housed at Oklahoma State Penitentiary in McAlester, Oklahoma.

5.     I understand that inmate Leatherman broke his right leg at Cimarron on July 26, 2018.  Housing history records for Cimarron Correctional Facility indicate that on that date he was housed on Compound 2 of the Cimarron facility in cell 109 of the Fox Alpha housing unit.  He had been assigned for housing to that cell block and cell on July 13, 2018.

6.     I understand that inmate Leatherman has filed a lawsuit asserting several claims. I understand he has asserted Defendants were negligent in their operation of the Cimarron facility by not providing adequate housing and supervision to him and were negligent by not providing reasonable medical care to him.  I understand inmate Leatherman has asserted Defendants violated his 14th and or 8th Amendment rights by removing in-cell bunk bed ladders from the inmate cells and not providing an alternative. I understand he has asserted Defendants violated his 8th Amendment rights by not providing him physical therapy and other medical care after he broke his leg and returned to the Cimarron facility having received hospital medical treatment.  I understand inmate Leatherman asserts Defendant CoreCivic was deliberately indifferent to his serious medical needs.  And I understand inmate Leatherman asserts Warden Sizemore disregarded risks to Plaintiff and was deliberately indifferent to inmate Leatherman's serious medical needs.

7. During the time of inmate Leatherman's incarceration at Cimarron Correctional Facility, an administrative remedies grievance process was available for inmate use. This facility followed the Oklahoma DOC inmate/offender administrative remedies grievance policy, DOC OP-090124.

8. The Oklahoma DOC inmate/offender administrative remedies process set out in policy OP-090124 first requires an inmate to attempt to resolve any issue through informal resolution.  This is done by the inmate using a Request to Staff form, filling in blanks on the form, and submitting the signed and dated Request to Staff document to the appropriate staff member. If the inmate is not satisfied with the response from the staff member, he must then file a formal grievance regarding his issue and attach to the grievance the Request to Staff with the response from the staff member.

9. If an inmate remains unsatisfied following his filing of the grievance, and the grievance response, the final step set out in the policy to exhaust administrative remedies directs the inmate to appeal the matter to the Oklahoma DOC Administrative Review Authority at the DOC Headquarters in Oklahoma City.  When an inmate appeals a decision to DOC's Administrative Review Authority, I receive a copy of the response from ARA, whether that is a memo returning the appeal unanswered, or a decisional response from the ARA Review Authority.  I keep that response with the original grievance record.

10. The administrative remedies policy directs at ¶(V)(A)(7), that if the inmate does not follow the process and instructions as explained in the policy provisions and on the grievance forms, the grievance may be returned to the inmate unanswered, for proper completion.  And, if the inmate is allowed to re-submit a properly completed grievance, the inmate must timely re-submit the grievance, within ten (10) calendar days of his receipt of the returned grievance.

11.     I have reviewed the grievance records maintained by the facility for 2018, 2019, and 2020.  During the two and one-half years he was confined at Cimarron, inmate Leatherman filed one (1) grievance.

12.     Inmate Leatherman submitted a grievance dated May 25, 2020. I stamped the grievance as received in my office on May 26, 2020 and I placed my initials on the "Received" date stamp.  I assigned the submitted grievance a grievance number – 20-171. On the Inmate/Offender Grievance, under ¶1 *The nature of your complaint*, inmate Leatherman wrote: Slipping off of top bunk broke right leg shin area tib & fib bones, received no physical therapy and orthopedic surgeon says I need full knee replacement.  Under ¶2 *Informal action taken (including dates) to resolve the complaint, as well as the names of those employees from whom you sought an answer to your grievance,* inmate Leatherman wrote: Want knee fixed, physical therapy, pain mgmt..  And under ¶3 *The action you believe the reviewing authority may lawfully take,* inmate Leatherman wrote: In constant pain want proper medical attention asap. Inmate Leatherman addressed Grievance 20-171 to Ms. Rashti, the Cimarron prison facility's Health Services Administrator.

13.     As the facility's Grievance Coordinator, I performed an initial review of the submitted grievance.  The grievance that had been submitted by inmate Leatherman was on the proper administrative remedies grievance form, but inmate Leatherman had not submitted with the grievance the required first-step Request to Staff document. Section V.A of OP-090124 required that the Request to Staff about the same subject as the Grievance be submitted with the Grievance. Additionally, the Grievance was not specific as to the dates, places, and personnel involved.  The form specifically states to be specific as to dates, places, and personnel involved.

14. I discussed Grievance 20-171 with the acting Warden, Virgil Ensey. Consistent with the Oklahoma DOC inmate grievance policy, Assistant Warden Ensey determined that the submitted Grievance should be returned to inmate Leatherman unanswered. However, Assistant Warden Ensey also determined that inmate Leatherman should be allowed an opportunity to properly submit a corrected grievance within 10 days.

15. As the Grievance Coordinator, I then prepared a Return Memorandum. I dated the Return Memorandum June 11, 2020 and clearly indicated on the Memorandum why the grievance was being returned unanswered to inmate Leatherman. I also indicated on the Return Memorandum that inmate Leatherman had ten (10) days from his receipt of the Return Memorandum to submit a corrected grievance.

16. Inmate Leatherman did not submit a corrected grievance.

17. Additionally, I did not receive any communication from the DOC's Administrative Review Authority that would have been an indication that inmate Leatherman had submitted an appeal of the facility's decision to return to him unanswered his Grievance 20-171.

18. The inmate grievance process was operational throughout the time inmate Leatherman was confined at Cimarron Correctional Facility. The facility's Law Library timely processed Requests to Staff submitted by inmates, and I timely processed grievances submitted by inmates.

19. Throughout inmate Leatherman's period of confinement at Cimarron, the necessary forms for an inmate's submission of either a Request to Staff or a Grievance were readily available to inmates on each and every one of the inmate housing units. To obtain a Request to Staff form or a Grievance form, an inmate simply had to ask a staff member on the

housing unit for one of the forms. An inmate did not need to go to the facility's library to obtain an administrative remedies form or to fill out and submit the form.

20. To submit a Request to Staff or a Grievance, an inmate simply had to fill out the form he had received from a staff member and then send it forward to the Law Library (for a Request to Staff) or to me, the Grievance Coordinator (for a grievance). An inmate could send Requests to Staff and Grievances forward using the facility's intra-facility mail system or an inmate could simply hand a Request to Staff or Grievance to their Case Manager or Unit Manager and the staff member would forward the form. With either way of delivery, the system was working during inmate Leatherman's time at Cimarron.

21. I have reviewed the grievance records maintained by the facility for 2018, 2019, and 2020. In 2018, inmates filed 455 grievances. In 2019, inmates filed 433 grievances. And inmates filed 274 grievances during the January 2020 thru August 2020 period.

22. Regarding Requests to Staff (the first step in the administrative remedies grievance process), for the period of February 1, 2018 thru December 31, 2018, inmates filed approximately 5,400 Requests to Staff. For the period January 1, 2019 thru December 31, 2019, inmates filed approximately 6,500 Requests to Staff. And during the time period January 1, 2020 thru August 31, 2020, inmates filed approximately 4,800 Requests to Staff.

23. As I have previously stated, though Grievance 20-171 was eventually returned to inmate Leatherman unanswered because of defects in his submission of the grievance, the grievance inmate Leatherman filled out and dated on May 25, 2020 was received by me the next day. I stamped the Grievance as received on May 26, 2020 and placed my initials on the date stamp.

24. At the time of his submission of Grievance 20-171 on May 25, 2020, inmate Leatherman wrote on the Grievance that he was housed on the facility's Echo Charlie housing unit. Facility housing records indicate that inmate Leatherman had been housed on the Echo Charlie housing unit at Cimarron since March 13, 2020.

25. The Cimarron facility's Intensive Supervision/Phases program was operated on the Echo Charlie and Echo Delta housing units during 2020. Facility records indicate inmate Leatherman had been assigned to the Intensive Supervision/Phases program on March 13, 2020. Inmates assigned to the Intensive Supervision/Phases program are on a restricted movement schedule and they do not leave their assigned housing unit. Even though he had been assigned to the Intensive Supervision/Phases program, inmate Leatherman obviously had access to the necessary administrative remedies grievance form and the intra-facility mail system. He had submitted a grievance on May 25, 2020 and I received the grievance the next day, May 26, 2020.

26. Based upon my review of the records, it appears that inmate Leatherman did not use the administrative remedies process to exhaustion of the issues he has brought forward to the District Court.

Further affiant sayeth not.

_____
TIFFANY HICKERSON

Subscribed and sworn to before me this 25 day of October 2021, by Tiffany Hickerson.

_____
NOTARY PUBLIC

My Commission expires: -04/20/25
My Commission number: 17003824



7